UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

JANE OLEJNICZAK,

                    Plaintiff,

          -vs-                          **No. 1:13-CV-00915 (MAT)**
                                        **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                    Defendant.

───────────────────────────────

## I.   Introduction

Represented by counsel, Jane Olejniczak ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted and the matter is reversed and remanded solely for the calculation and payment of benefits.

## II.  Procedural History

The record reveals that in January 2011, plaintiff (d/o/b October 13, 1957) applied for DIB. After her application was denied, plaintiff requested a hearing, which was held before administrative law judge Marilyn D. Zahm ("the ALJ") on July 6, 2012. The ALJ issued an unfavorable decision on July 26, 2012. The

Appeals Council denied review of that decision and this timely action followed.

**III. The ALJ's Decision**

At step one of the five-step sequential evaluation, see 20 C.F.R. § 416.920, the ALJ determined that plaintiff had not engaged in substantial gainful activity since September 29, 2010, the alleged onset date. At step two, the ALJ found that plaintiff suffered from panic disorder, an impairment which she considered severe. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. The ALJ found that plaintiff had no restrictions in activities of daily living ("ADLs"), moderate restrictions in social functioning and concentration, persistence or pace, and no prior episodes of decompensation.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments, plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: "[she could] engage in no supervisory duties, nor [could] she deal with the general public. She [could] have occasional interactions with co-workers. She [could not] engage in production-rated (high speed) jobs. She [was] limited to unskilled work." T. 15. At step four, the ALJ found that plaintiff was unable

2

to perform past relevant work. At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which plaintiff could perform. Accordingly, she found that plaintiff was not disabled.

## IV.  Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

In this case, the ALJ purported to give "great" weight to the June 2011 opinion of plaintiff's treating psychiatrist, Dr. Balvinder Kang. Dr. Kang opined, as will be more fully discussed below, that plaintiff had various work-related limitations which would prevent her from performing substantial gainful activity on a regular and continuing basis. Despite stating that she gave great weight to Dr. Kang's opinion, the ALJ nevertheless concluded that plaintiff was not disabled, finding that plaintiff's treatment notes from Dr. Kang showed that she improved as of September 29, 2011.

Plaintiff contends that the ALJ erred in failing to give Dr. Kang's opinion controlling weight under the treating physician rule, and that, in any event, even given great weight as the ALJ stated, Dr. Kang's opinion would have established plaintiff's disability for the closed period between September 29, 2010 and September 29, 2011. The Court agrees with plaintiff that the ALJ erred in failing to give controlling weight to Dr. Kang's opinion, and that the ALJ further erred by substituting her own medical judgment for Dr. Kang's in determining that plaintiff's condition improved as of September 29, 2011. See 20 C.F.R. § 404.1527(c)(2) (stating treating physician rule). Because the Court considers these issues to be dispositive, the Court will not address plaintiff's remaining arguments.

In June 2011, plaintiff's treating psychiatrist Dr. Kang provided a mental RFC questionnaire, in which he noted that plaintiff was diagnosed with panic disorder without agoraphobia. In a handwritten portion of the form, Dr. Kang noted that clinical findings demonstrating the severity of plaintiff's impairment included panic attacks, palpitations, nervousness, anxiety, poor concentration, and insomnia; Dr. Kang also opined that plaintiff was "unable to handle stress" and her prognosis was "poor." T. 264. Dr. Kang opined that plaintiff was "seriously limited" in numerous areas of functioning, including maintaining attention and concentration, working with others, completing a normal workday or

workweek, and dealing with normal work stress. In Dr. Kang's opinion, plaintiff was unable to engage in full-time competitive employment on a sustained basis. Dr. Kang stated that plaintiff's limitations began in September 2010, and that they had "lasted or [could] be expected to last at least twelve months." T. 269.

A month earlier, in May 2011, plaintiff had undergone a consulting psychiatric examination with state agency psychologist Dr. Thomas Ryan. Mental status examination was normal except that plaintiff demonstrated mildly impaired recent and remote memory skills. Dr. Ryan opined that plaintiff could follow and understand simple instructions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks, make adequate decisions, and relate adequately with others. According to Dr. Ryan, plaintiff would be moderately limited in dealing with stress. State review psychologist Dr. T. Andrews also completed a psychiatric review technique and mental RFC in May 2011. Dr. Andrews, who did not examine plaintiff, found that plaintiff was moderately limited in social functioning and maintaining concentration, persistence, or pace, but opined that her limitations did "not preclude simple work in a low stress environment." T. 251.

The record reveals that plaintiff treated with Dr. Kang for psychiatric care beginning in June 2007. At the time of her referral to Dr. Kang from another psychiatrist, she had a "history

of panic attacks, hyperventilation, palpitations, shakiness," and anxiety "for the last 20 years." T. 229. Treatment notes indicate that in September 2010, plaintiff's symptoms of anxiety worsened, and she reported that she did not want to quit her then full-time job, but she felt "burnt out." T. 225. Dr. Kang recommended time off from work on September 30, 2010, and continued plaintiff's prescription of Ativan (Lorazepam) for treatment of anxiety. Over the next several months plaintiff treated with Dr. Kang approximately once per month, and Dr. Kang noted continued symptoms of anxiety, including panic attacks and hyperventilation.

In October 2011, Dr. Kang noted that plaintiff was looking for a part-time job, but continued to experience anxiety, panic, and insomnia. In January 2012, Dr. Kang noted that plaintiff continued to look for a part-time job, and that she continued to experience symptoms including tension, anxiety, panic, and trouble falling asleep.

At her hearing in July 2012, plaintiff testified that she was working part-time, approximately 20 hours per week, at a gas station and had held that position since approximately October 2011. Before that, plaintiff was employed as a supervisor at Western Off Track Betting for approximately 17 years, from 1993 through her retirement due to anxiety issues in 2010. Plaintiff testified that stress stemming from her job duties had led to symptoms including hyperventilation and dizzy spells. She also

testified that she had difficulty with attention and concentration. She took a week off from work in March 2012 due to her symptoms. She testified that she believed she would continue to experience anxiety even if she obtained a full-time job requiring less interaction with people.

The treating physician rule "recognizes that a physician who has a long history with a patient is better positioned to evaluate the patient's disability than a doctor who observes the patient once for the purposes of a disability hearing." <u>Santiago v. Barnhart</u>, 441 F. Supp. 2d 620, 629 (S.D.N.Y. 2006) (citing <u>Schisler v. Sullivan</u>, 3 F.3d 563, 568 (2d Cir. 1993) (noting that regulations give deference to treating physicians' opinions because "opinions based on a patient-physician relationship are more reliable than opinions based . . . solely on an examination for purposes of the disability proceedings themselves")). As the <u>Santiago</u> court recognized, the treating physician rule is "even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time. Thus, while the ALJ can consider the opinions of [consulting medical sources], absent more compelling evidence[,] their opinions should not be given controlling weight over those of [a treating psychiatrist]." 441 F. Supp. 2d at 629.

Initially, the Court notes that the ALJ's statement that she gave "great weight" to Dr. Kang's June 2011 opinion is belied by

her finding that plaintiff was not disabled at any point during the relevant time period. If Dr. Kang's opinion was given great weight, at the very least it would establish disability for the time period from September 2010 through September 2011, as plaintiff argues. However, the ALJ's failure to actually give Dr. Kang's opinion any significant weight – despite her statement that she did – clearly indicates to the Court that the ALJ failed to properly apply the treating physician rule to Dr. Kang's opinion.

Presumably because she accorded the opinion "great weight," the ALJ failed to state good reasons why Dr. Kang's opinion was actually rejected in coming to the disability determination. See Augustine v. Astrue, 2012 WL 2700507, *6 (E.D.N.Y. July 6, 2012) ("An ALJ who declines to give controlling weight to the treating physicians' medical opinions must give 'good reasons' for her decision by considering [the] factors [set forth in 20 C.F.R. § 404.1527(c)]."). The only "reason" given by the ALJ for discounting Dr. Kang's opinion was that as of October 2011, plaintiff "was looking for a new job," and that she subsequently obtained a part-time job. T. 20. According to the ALJ's reasoning, the fact that plaintiff could "satisfactorily" perform this job "indicate[d] that she could perform a fulltime job that did not include these stressors," which the ALJ defined as customers, complaints, and deadlines. Id.

As plaintiff argues, the ALJ's finding that plaintiff could perform such full-time work is unsupported by any medical opinion in the record, especially considering that the ALJ gave little weight to the opinions of the state agency psychologists. See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("[I]t is well-settled that 'the ALJ cannot arbitrarily substitute his judgment for competent medical opinion.'"). Moreover, plaintiff's performance of part-time work, which she testified resulted in psychological symptoms quite consistent with those noted by Dr. Kang in his treatment notes and in his opinion, did not translate into an ability to perform full-time work with less "stressors" as defined by the ALJ, with no reference to medical evidence or opinions.

The ALJ focused on the fact that plaintiff was looking for part-time work, but ignored Dr. Kang's simultaneous notes that she was still experiencing similar anxiety symptoms consistent with her diagnosis. The treatment notes upon which the ALJ relied, which noted that plaintiff was looking for part-time work but continued to experience symptoms related to her panic disorder, thus failed to substantially contradict Dr. Kang's opinion as the ALJ found. See, e.g., Nix v. Astrue, 2009 WL 3429616, *6 (W.D.N.Y. Oct. 22, 2009) (noting that an ALJ may not engage in a "selective analysis of the record" and "may not ignore an entire line of evidence that is contrary to [his] findings") (internal quotation marks omitted).

The regulations provide that when a treating source's opinion is rejected, the ALJ must consider various factors including (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; and (iv) whether the opinion is from a specialist. See 20 C.F.R. § 404.1527(c). An assessment of the factors in this case does not support the ALJ's rejection of Dr. Kang's opinion. Dr. Kang had a long treatment relationship with plaintiff, dating back four years, and he regularly treated plaintiff over the relevant time period. He specialized in psychiatry, and his opinion was consistent with the record as a whole, including his own treatment notes. Moreover, Dr. Kang's opinion was consistent with Dr. Ryan's opinion, who, after a consulting examination, concluded that plaintiff would be moderately limited in dealing with stress.

Substantial evidence in the record supports Dr. Kang's opinion that plaintiff was unable to sustain work on a full-time basis, and plaintiff's experiences in returning to part-time work do not undermine that opinion. See SSR 96-8p (defining work on a "regular and continuing basis" as comprising "8 hours a day, for 5 days a week, or an equivalent work schedule"). Rather, plaintiff's experiences in part-time work reveal that she did experience significant stress and anxiety, even in a job requiring only half

the hours of full-time work. Because Dr. Kang's opinion was supported by his clinical findings in treatment and by plaintiff's record of treatment, and because the factors set forth in 20 C.F.R. § 404.1527(c) did not support rejecting his opinion, the ALJ should have given Dr. Kang's opinion controlling weight upon proper application of the treating physician rule.

Given the controlling weight to which it was entitled, Dr. Kang's opinion establishes that plaintiff's inability to sustain full-time work renders her disabled under the regulations. See SSR 96-8p. The Court notes that the standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, see Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, see Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir. 2004). That standard has been met in this case. Because additional proceedings would serve no purpose and would lead to further delay of plaintiff's claim which has been pending for over five years, remand solely for the calculation and payment of benefits is warranted. See McClain v. Barnhart, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004) (recognizing "delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability").

**V.    Conclusion**

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings (Doc. 14) is denied and plaintiff's motion (Doc. 8) is granted. This matter is reversed and remanded solely for the calculation and payment of benefits. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


                                    **S/Michael A. Telesca**
                                    HON. MICHAEL A. TELESCA
                                    United States District Judge

Dated:    April 15, 2016
          Rochester, New York.